UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARYANN K. BRUDER,

        Plaintiff,

                                                    Case number 05-74511

v.                                       Honorable Julian Abele Cook, Jr.

ERIC SMITH, Individually, and in his capacity as
Macomb County Prosecutor, and MACOMB
COUNTY, Jointly and Severally ,

        Defendants.

_____

ORDER

On November 29, 2005, the Plaintiff, Maryann K. Bruder ("Bruder"), filed a Complaint, in

which she charged the Defendants, Eric Smith and Macomb County, with violations of her civil rights

that have been guaranteed to her under the Fifth and Fourteenth Amendments to the United States

Constitution.  Specifically, Bruder complains that each of the Defendants knowingly and intentionally

(1) deprived her of a fundamental right to due process under the United States Constitution, (2)

committed unlawful and illegal acts of retaliation against her, and (3)  placed a limitation upon her

ability to seek other law related employment opportunities, all of which were caused by the

unwarranted termination of her employment as an Assistant Prosecuting Attorney.[1]

Contemporaneously with the filing of this Complaint, she filed a motion, seeking to obtain a

temporary restraining order that would prohibit the Defendants from undertaking any administrative

efforts to fill the vacancy that had been created by the involuntary termination of her employment.

---

[1]For the limited purpose of this Order, the words, "Assistant Prosecuting Attorney" and
"Assistant Prosecutor"are used interchangeably and without any meaningful distinction.

Bruder's request for a temporary restraining order was denied on December 6, 2005. However, a hearing was conducted by the Court on December 20-21, 2005 to address Bruder's request for a temporary injunction. For the reasons that are stated below, her request for the issuance of a preliminary injunction will be granted.

I.

Bruder was employed by the Defendant, Macomb County, as an Assistant Prosecuting Attorney from July 8, 2002 until October 27, 2005 when her employment responsibilities were involuntarily terminated. In February 2005, she was assigned to the domestic violence unit within the Prosecutor's Office. In conjunction with these job duties and responsibilities, Bruder was assigned to handle the trial of *People v. Baumer*,[2] which was scheduled to begin on September 13, 2005. As she prepared for the trial, Bruder was informed by Detective John Rollo ("Rollo"), the officer in charge of the case, that Victoria Baumer ("Baumer"), a crucial witness for the prosecution, was missing and, presumably, would not appear for trial. During the morning of the scheduled date of trial, Bruder made an oral motion before Honorable James Biernat of the Macomb County Circuit Court, in which she asked him to authorize the issuance of a "material witness" warrant that would presumably ensure Baumer's appearance in court. Her request was granted.

Thereafter, Bruder consulted with James Langtry, Chief of Operations in the Macomb County Prosecutor's Office who informed her that (1) his office did not approve of her use of a "material witness" warrant under these circumstances, and (2) she should not pursue such a measure to obtain the presence of a witness in the *Baumer* case. As a consequence, Bruder neither

_____

[2]*People v Julie Baumer*, Macomb County Circuit Court Case Number 04-2096,

secured nor attempted to obtain Judge Biernat's signature which would validate the execution of the warrant.

On September 14, 2005, Bruder received a telephone call from Rollo who advised her that Baumer had been arrested in connection with some outstanding misdemeanor warrants.[3] According to Rollo, Bruder advised him that, inasmuch as Baumer could only be detained for an extremely limited period of time, she would now seek to obtain a "material witness" warrant.  On the following day (September 15, 2005), Bruder informed Robert Merelli, Chief of Special Units, that Baumer had been arrested on the misdemeanor warrants.  In turn, he instructed Bruder that the "material witness" warrant should not be used by her as a tool for ensuring the presence of Baumer for the trial. When she informed Rollo that the "material witness" warrant would not be implemented,  Baumer was released from jail shortly thereafter.

On October 3, 2005, Bruder received a letter from Benjamin Liston ("Liston"), Chief of Staff of the Macomb County Prosecutor's Office, who informed her that she had been placed on "administrative leave" effective immediately.  In his letter to Bruder, Liston advised her that "[t]he County is conducting an investigation regarding allegations that [she] inappropriately subjected a witness to arrest."  He also informed Bruder that a *Loudermill*[4] hearing would be conducted on October 6, 2005 to evaluate her conduct as an Assistant Prosecuting Attorney.[5]

---

[3]At the time of her receipt of Rollo's telephone call, Bruder was unaware of Baumer's outstanding misdemeanor warrants.

[4]*Cleveland Board of Education v Loudermill,* 470 U.S. 532 (1985).

[5]Because of a conflict in the schedule of John Courie, who served as the "duly elected union steward for the Macomb County Assistant Prosecuting Attorneys pursuant to the terms of the [Collective Bargaining Agreement]" during all of the times that are relevant to this controversy, the *Loudermill* hearing was reset to October 5, 2005. Courie Affidavit at 2.

According to Bruder, the *Loudermill* hearing was conducted strictly as a question and answer

session in which she was not given an opportunity to present her side of the controversy. She also

maintains that Courie was not permitted to ask clarifying questions. Subsequently and presumably

not related directly to the *Loudermill* hearing, Bruder learned that all of her case files had been

reassigned to other assistant prosecuting attorneys within the office.

On October 19, 2005, Courie, on behalf of Bruder, received the following "preliminary

statement of charges" from the Defendants:

"1.    That Maryann Bruder, contrary to specific direction from authorized supervisory
employees of the Office of the Prosecuting Attorney, induced Sheriff Department
employees to arrest an individual for purposes of having that individual testify at a
trial.

2.    That Maryann Bruder was less than truthful in the investigation conducted by the
County of Macomb subsequent to the allegations referred to in #1, above."

Bruder, through Courie, orally challenged the validity of these charges against her, and

sought to obtain a more specific statement from the Defendants.[6]     James Meyerand

("Meyerand"), an Assistant Corporation Counsel, verbally informed Courie that more

information would be forthcoming.  On October 26, 2005, Bruder, acting through her union

representative, delivered a formal written memorandum, in which she sought to obtain

information regarding the specific charges against Bruder.

In a letter to Bruder, which bore the date of October 27, 2005, the Defendant, Eric Smith

---

[6]Pursuant to Article 8 of the parties' collective bargaining agreement, "[n]o Assistant
Prosecutor shall be terminated, suspended without pay, or demoted for disciplinary reasons prior
to a hearing pursuant to this article." Paragraph B at 6. This same Article also requires, in part,
the County to advise the affected assistant prosecuting attorney in writing, of any disciplinary
action to be taken against her. Paragraph D at 6.  In addition, this paragraph adds that such a
"notice shall contain a specific statement of the reasons for imposing the discipline and the
specific nature of the discipline intended." Id.

("Smith"), Macomb County Prosecutor, effectively terminated her employment.   In his

correspondence, Smith asserted that this disciplinary action had become necessary because

Bruder (1) was insubordinate, (2) had created a breach of trust between his office and the law

enforcement agencies within Macomb County, and (3) had interfered with the efficient operation

of his office's prosecutorial mission.   On the same day, Courie, acting on behalf of Bruder,

made a demand for an opportunity to be heard before a duly constituted seven person Hearing

Board.[7]   On October 31, 2005, Smith rejected Bruder's request, asserting that her application

was tardy, in that it should have been submitted within a twenty four hour period  of her receipt

of the preliminary statement of charges.

## II.

In considering a motion for a preliminary injunction, the Sixth Circuit Court of Appeals

has held that "a district court must consider and balance four factors: (1) whether the movant has

a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable

injury without the injunction; (3) whether the issuance of an injunction would cause substantial

harm to others; and (4) whether the public interest would be served by the issuance of

injunction." *Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999)

(quoting *Blue Cross & Blue Shield Mutual of Ohio v. Columbia/HCA Healthcare Corp.*, 110

F.3d 318, 322 (6th Cir. 1997)) (quotation marks omitted).   Moreover, the Sixth Circuit has

stressed that "the four considerations applicable to preliminary injunction decisions are factors

to be balanced, not prerequisites that must be met." *In re DeLorean Motor Co.*, 755 F.2d 1223,

---

[7]According to Paragraph C, a Hearing Board is the creation of the parties' Collective
Bargaining Agreement which consists of "seven (7) members of the bargaining unit chosen by
lot."

1229 (6th Cir. 1985).   In utilizing this admonition, this Court must decide whether the movant in this matter has established a sufficient basis that would permit this Court to issue a preliminary injunction.  In its evaluation of the merit of the Plaintiff's application for injunctive relief, the Court will now examine the *Memphis Planned Parenthood* standards in seriatim.

III.

A.      Strong Likelihood of Success on the Merits

In 1985, the Supreme Court declared that due process requires the Government to afford an aggrieved person with an opportunity to be heard prior to the deprivation of life, liberty, or property.  *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542 (1985).  Under this basic and fundamental standard, a municipal government employee (such as Bruder) has a right to be provided with an oral and/or written notice of the charges against him or her.  *Id.* at 546. Additionally, the adversely affected employee (1) has a right to present her position on the contested issues, and (2) is entitled to an explanation of the employer's evidence against him or her.  *Id.*

In her request for the issuance of a preliminary injunction in this pending litigation, Bruder maintains that she was denied her right to receive substantive and procedural due process during, and as a consequence of, the *Loudermill* hearing.  It is her contention that the *Loudermill* hearing was unfairly limited to an extensive array of questions by Meyerand, who served as the Defendants' representative, and her responses to his inquiries. Bruder also maintains, among other things, that neither she nor the union representative, were given (1) any advance notice of the specific charges that had been, or would be, placed against her, or (2) an opportunity to submit evidence with which to counter and challenge the accusations of the claimed

6

misconduct.[8]   The Defendants dispute these accusations, contending that Bruder was fully aware

of their claims of misconduct by pointing to Liston's letter of October 3rd and the content of

Meyerand's questions during the *Loudermill* hearing.

When considering the positions that were advanced during the parties' appearance in this

Court on December 20-21, it is the conclusion of this Court that Bruder's fundamental civil

rights were violated during the *Loudermill* hearing of October 5, 2005.  Although Bruder

voluntarily appeared at the hearing and responded to Meyerand's questions, the Defendants have

failed to satisfy the minimum *Loudermill* standards which, in essence, require an employer to

provide the affected employee with notice of the pending charges against her, as well as an

explanation of the employer's evidence against her.  Although Bruder, through the questioning

by Meyerand, was able to indirectly glean the thrust of the Defendants' concerns, she was not

given - in written or oral form - the specific allegations of her alleged misconduct which was

subsequently reduced to writing by Smith in his letter of October 27th. Moreover, the Court is

deeply troubled with the failure of the Defendants to disclose and turn over pertinent documents

to Bruder that were in their custody during the *Loudermill* hearing and could, arguably, have

been of assistance to her defense in this administrative procedure.  Unarmed with such crucial

information, Bruder was unable to adequately protect her interests the *Loudermill* hearing, and

subsequently thereafter.  Thus, in its review of the testimony, the Court concludes that Bruder's

rights to due process were violated during the alleged *Loudermill* hearing on October 5, 2005.

---

[8]During the hearing on December 21, 2005, Bruder claimed that Meyerand withheld
certain presumably inculpatory evidence from her during the *Loudermill* hearing.  Meyerand
disputes this allegation, contending that his questions of her during this hearing encompassed
many, if not all, of the information contained in the documents.

The Court now turns to Bruder's contention that her rights to procedural due process were violated when the Defendants rejected her efforts to obtain a hearing before the Hearing Board, as guaranteed by the parties' Collective Bargaining Agreement. Bruder submits that, although she made a demand for such a hearing in a timely manner, the Defendants summarily rejected it without any legitimate basis for their decision. It is the collective contention of the Defendants that she waived a right to appear before a Hearing Board under the time constraints which were established in the Collective Bargaining Agreement. They argue that, inasmuch as this request should have been submitted prior to 5 pm on October 20th, Bruder's failure to do so deprives her of any right to appear before the seven member Hearing Board panel.

This Court disagrees with the Defendants on two grounds. First, and contrary to the their position on this issue, the letter of October 3, 2005,[9] upon which they rely to support this position, did not provide Bruder with sufficient notice of her alleged deficiencies which were subsequently identified by Smith in his letter of October 27th. Second, Bruder's right to request a hearing by the Hearing Board was not triggered until the date on which she was formally disciplined (i.e., October 27, 2005). During the preliminary injunction hearing, the Defendants, through their witnesses, acknowledged that the imposition of an administrative leave was not a disciplinary action. Furthermore, the termination letter dated October 27th was the first time that she was provided with *specific* charges regarding her termination. Although the Defendants contend that Bruder knew or should have known of the nature of their disenchantment with her performance as an Assistant Prosecuting Attorney, the Collective Bargaining Agreement, to

---

[9]The letter of October 3rd from Liston informed Bruder that (1) the County "is conducting an investigation regarding allegations that [she] inappropriately subjected a witness to arrest, and (2) she was being placed on paid administrative leave.

which the parties were bound, obligates the employer to provide the adversely affected employee with specific charges of the alleged misconduct. As a result, October 27, 2005 was the appropriate date upon which to request a hearing. Thus, the Court determines that the Defendants' position with regard to the timing of Bruder's demand for a hearing is incorrect.

B.      Irreparable Injury

In seeking a preliminary injunction, a party must make a clear showing of a significant threat that (1) an irreparable injury will result if relief is not granted, and (2) no other adequate legal remedy is available. *City of Parma v. Levi,* 536 F.2d 133, 135 (6th Cir. 1976). An injury is not fully compensable by money damages if the nature of the aggrieved party's loss would make damages difficult to calculate. *Basicomputer Corp. v. Scott,* 973 F.2d 507, 511 (6th Cir. 1992).

In her Complaint, Bruder alleges that she has been stigmatized by the Defendants' administrative decision to terminate her employment. According to Bruder, this has adversely affected her reputation as an effective and effective lawyer within the legal community. This Court agrees with Bruder that her involuntary termination from the Macomb County Prosecutor's Office may cause, or is likely to cause, her to suffer irreparable harm if a preliminary injunction is not granted immediately.

C.      Balancing of the Harms and the Public Interest

This Court turns now to an evaluation of (1) whether the reinstatement of Bruder's employment with back pay would cause substantial harm to others, and (2) if the public interest would be served by such a reinstatement. Smith is the highest ranking state law enforcement official in Macomb County. Indeed, it is axiomatic that every public official must ensure that

the laws of the United States are followed in their entirety. This Court concludes that no harm

will be caused to the general public or to the residents of Macomb County if a preliminary

injunction is granted in this litigation under these circumstances.  Clearly, the public has a strong

public interest in protecting a government employee's right to a fair hearing in the work place.

Additionally, the public interest is always served when the constitutional rights of a citizen, such

as a right to fundamental due process, are vindicated.

IV.

Based on the available record, this Court concludes that Bruder has set forth sufficient

evidence to justify the imposition of injunctive relief in this cause. Significantly, she has

sustained her burden of demonstrating a strong likelihood of success on the merits.

Additionally, Bruder has established that she will suffer irreparable harm if an injunction is not

issued.        Accordingly, this Court will grant Bruder's request for reinstatement of her

position as Assistant Prosecuting Attorney along with back pay commencing on the date of her

termination, October 27, 2005.


IT IS SO ORDERED.


Dated: <u>December 22, 2005</u>            <u>s/ Julian Abele Cook, Jr.</u>
       Detroit, Michigan               JULIAN ABELE COOK, JR.
                                       United States District Judge

<u>Certificate of Service</u>

I hereby certify that on December 22, 2005,  I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

s/ Kay Alford
Courtroom Deputy Clerk
