UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARYANN K. BRUDER,

        Plaintiff,

v.

                                          Case number 05-74511

ERIC SMITH, Individually, and in his capacity as     Honorable Julian Abele Cook, Jr.
Macomb County Prosecutor, and MACOMB
COUNTY, Jointly and Severally,

        Defendants.


ORDER

      In this case, the Plaintiff, Maryann K. Bruder, has accused the Defendants, Macomb County

Prosecutor Eric Smith and Macomb County of Michigan, of violating those civil rights which have

been guaranteed to her by the Fifth and Fourteenth Amendments to the United States Constitution.

It is her contention that these Defendants knowingly and intentionally (1) deprived her of a

fundamental right to due process under the United States Constitution, (2) committed unlawful and

illegal acts of retaliation against her, and (3) placed a limitation upon her ability to seek other law

related employment opportunities, all of which were caused by the unwarranted termination of her

employment as an assistant prosecuting attorney.

      Following a two-day long hearing on December 22, 2005, the Court (1) granted Bruder's

motion for a preliminary injunction after finding, *inter alia*, that she had "sustained her burden of

demonstrating a strong likelihood of success on the merits," (2) ordered her reinstatement to the

position as an assistant prosecuting attorney, and (3) directed the Defendants to provide her with

back pay.[1]  The Defendants appealed this decision to the Sixth Circuit Court of Appeals which, on

January 26, 2007, dismissed the appeal for reasons of mootness and remanded the case to this Court

for further proceedings in an unpublished opinion.  *Bruder v. Smith*, 215 Fed. Appx. 412 (6th Cir.

2007).  In its decision, the Sixth Circuit also stated the following:

> The district court's grant of a preliminary injunction, although resting in part on the
> likelihood of success on the merits, did not adjudicate the merits of this controversy.
> See *Camenisch*, 451 U.S. at 394-96.  Plaintiff has a continuing action for, inter alia,
> money damages and attorney's fees under 42 U.S.C. § 1983 for the same alleged
> constitutional violation that formed the basis of the preliminary injunction.  This
> litigation, if pursued by the parties, will produce a final decision on the merits.
> These issues are very much live . . . .

*Id*. at 416-17.  Following the remand of the case to this Court, the Defendants filed a motion for the

entry of a summary judgment on January 29, 2008, relying upon Fed. R. Civ. P. 12(c)[2] and Fed. R.

Civ. P. 56(c).[3]  Bruder filed a response in opposition on March 3, 2008, to which the Defendants

replied on March 12, 2008.[4]

For the reasons that have been stated below, the Court denies the Defendants' motion in part

and grants it in part.

---

[1]Following the entry of this preliminary injunction, the Defendants immediately placed
Bruder on administrative leave, and thereafter terminated her again with all the protections of due
process.  *Bruder v. Smith*, 215 Fed. Appx. 412 (6th Cir. 2007).

[2]Fed. R. Civ. P. 12(c) states the following: "After the pleadings are closed - but early enough
not to delay trial - a party may move for judgment on the pleadings."

[3]Fed. R. Civ. P. 56(c) states, in pertinent part: "The judgment sought should be rendered if
the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is
no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of
law."

[4]After receiving leave from the Court, the Defendants filed a supplemental motion in support
of their motion for summary judgment on July 8, 2008.  Bruder responded one week later, to which
and the Defendants filed a reply on July 21, 2008.

Bruder was employed by the Macomb County government in Michigan as an assistant prosecuting attorney from July 8, 2002 until October 27, 2005 when she was involuntarily terminated from her employment. Prior to the loss of her job, she was assigned to the domestic violence unit within the Prosecutor's Office in February 2005. In conjunction with these job duties and responsibilities, Bruder was assigned to handle the trial of *People v. Baumer*,[5] which was scheduled to begin on September 13, 2005. As Bruder prepared for the trial, she was informed by the detective in charge of the case, John Rollo, that a crucial witness for the prosecution, Victoria Baumer, was missing and, presumably, would not appear for trial. During the morning of the scheduled date of trial, Bruder made an oral motion before Judge James Biernat of the Macomb County Circuit Court, in which she asked him to authorize the issuance of a "material witness" warrant that would presumably ensure Baumer's appearance in court. Her request was granted.[6]

On September 14, 2005, Bruder received a telephone call from Rollo who advised her that Baumer had been arrested in connection with some unrelated misdemeanor warrants. At the time of her receipt of Rollo's telephone call, she was unaware of Baumer's outstanding warrants. On the following day, Bruder informed Robert Merelli, Chief of Special Units, that Baumer had been

---

[5]*People v Julie Baumer*, Macomb County Circuit Court Case No. 04-2096.

[6]It should be noted that on the date of the trial when Baumer made her oral request to Judge Biernat, no official policy regarding the application of a "material witness" warrant for trial purposes had been established by the Macomb County Prosecutor's Office, Smith, or his predecessor. Thereafter, Bruder sought advice and assistance from her supervisor/Chief of Operations, James Langtry, who informed her that (1) the Macomb County Prosecutor's Office did not utilize "material witness" warrants and (2) she should not seek such a warrant in the *Baumer* case. As a consequence, she neither secured nor attempted to obtain the appropriate signature for the execution of the warrant.

arrested on misdemeanor warrants. In turn, he instructed Bruder that the "material witness" warrant could not, and should not, be used by her. When she informed Rollo that the "material witness" warrant would not be utilized, Baumer was released from jail.

On October 3, 2005, Bruder received a letter from Benjamin Linton, Chief of Staff of the Macomb County Prosecutor's Office, who informed her that she had been placed on administrative leave effective immediately. In his letter, Linton also advised Bruder that (1) "[t]he County is conducting an investigation regarding allegations that [she had ] inappropriately subjected a witness to arrest," and (2) a *"Loudermill"*[7] hearing would be conducted on October 6, 2005.

According to Bruder, the "*Loudermill*" hearing, which was moved to October 5, 2005 in an effort to accommodate a conflict in the schedule of John Courie who served as the "duly elected union steward for the Macomb County Assistant Prosecuting Attorneys pursuant to the terms of the [Collective Bargaining Agreement]," was conducted as a question and answer session in which neither she nor Courie were given an opportunity to present her side of the controversy or ask clarifying questions. Although presumably unrelated to the "*Loudermill*" hearing, Bruder learned that all of her case files had been reassigned to other assistant prosecutors within the office. Moreover, Bruder insists that she was never advised of the specific acts of misconduct, about which the Defendants had complained.

On October 19, 2005, Courie received the following "preliminary statement of charges" from the Defendants:

> 1.    That Maryann Bruder, contrary to specific direction from authorized supervisory employees of the Office of the Prosecuting Attorney, induced Sheriff Department employees to arrest an individual for

---

[7]*Cleveland Board of Education v Loudermill,* 470 U.S. 532 (1985).

purposes of having that individual testify at a trial.

2.      That Maryann Bruder was less than truthful in the investigation conducted by the County of Macomb subsequent to the allegations referred to in #1, above.

Bruder, through Courie, orally challenged the quality of the charges against her, and asked the Defendants for a more specific statement.[8] James Meyerand, an assistant corporation counsel, verbally informed Courie that more information would be forthcoming. On October 26, 2005, Courie submitted a formal written document, in which he sought information regarding the specific charges against Bruder.

In a letter to Bruder on October 27, 2005, Smith effectively terminated her employment because, in his opinion, she had (1) become insubordinate, (2) created a breach of trust between his office and the law enforcement agencies within Macomb County, and (3) interfered with the efficient operation of the Prosecutor's Office's prosecutorial mission. On the same day, Courie, acting on behalf of Bruder, made a written demand for an opportunity to be heard before a duly constituted seven person Hearing Board.[9] On October 31, 2005, Smith rejected Bruder's request, asserting that her application was tardy, pointing out that it should have been submitted within twenty four hours of her receipt of the preliminary statement of charges. This lawsuit followed with the filing of a complaint by Bruder on November 29, 2005.

---

[8]Pursuant to Article 8 of the parties' collective bargaining agreement, "[n]o Assistant Prosecutor shall be terminated, suspended without pay, or demoted for disciplinary reasons prior to a hearing pursuant to this article." Paragraph B at 6. Furthermore, Paragraph D requires, in part, the County to advise the affected Assistant Prosecutor in writing, of any disciplinary action being taken against him or her. This Paragraph also adds that such a "notice shall contain a specific statement of the reasons for imposing the discipline and the specific nature of the discipline intended."

[9]According to Paragraph C, a Hearing Board is the creation of the parties' Collective Bargaining Agreement which consists of "seven (7) members of the bargaining unit chosen by lot."

In their motion for summary judgment, the Defendants claim that (1) there is no genuine issue of a material fact regarding Bruder's denial of procedural due process claim under 42 U.S.C. § 1983, and (2) Bruder's retaliation and liberty interest claims should be dismissed because of her failure to state a genuine issue of a material fact.[10]

The language in Fed. R. Civ. P. 56(c) proscribes that a summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Significantly, it is incumbent upon the moving party to demonstrate the absence of a genuine issue of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This standard can be accomplished by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323. If and when the moving party satisfies its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elect. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden on the nonmovants is such that if the evidence presented is "merely colorable" or is "not significantly probative," then a summary judgment may be entered against them. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). When seeking to determine the materiality

---

[10] In Bruder's response to the Defendants' motion, she stipulated to the dismissal of her liberty interest claim in the complaint. Hence, this order will only address the allegations that are found in the other two counts of the complaint.

of an issue, the substantive law - without regard to the evidentiary requirements - determines "which facts are critical and which are irrelevant." *Id.* at 248.

III.

In the Defendants' first argument, they submit that there is no genuine issue of a material fact regarding Bruder's contention that she was denied procedural due process under 42 U.S.C. § 1983. An examination of 42 U.S.C. § 1983 reveals the following language:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Initially, the Defendants maintain that this lawsuit cannot be sustained because they are entitled to the protections of qualified immunity. They also assert that, inasmuch as this case has been examined and decided by the Court of Appeals for the Sixth Circuit, the "law of the case" doctrine prevents any further litigation which, in turn, renders Bruder's claims moot.

Next, the Defendants contend that Bruder's retaliation claim should be dismissed as well because she has failed to state a genuine issue of a material fact, noting the absence of any evidence to support her claim for retaliation. Moreover, they proclaim that even if there was some evidence to support such a claim, she cannot overcome their legitimate business reasons for the termination of her employment.

Bruder takes a different view, arguing that (1) the Defendants are not entitled to qualified immunity, and (2) she was denied her constitutionally mandated right of due process prior to being terminated in October 2005. She also submits that while acknowledging the development of the

law of the case by the Sixth Circuit, Bruder argues that it neither prohibits further proceedings on these remaining issues in this case nor does it render these matters moot. Finally, Bruder asserts that the Defendants' admissions have overcome any legitimate business reason for her initial termination.

The Court fails to see the merit in the Defendants' contention that mootness and the "law of the case" doctrine prevent this Court from adjudicating the remaining issues in these proceedings. In opining on this case, the Sixth Circuit Court of Appeals stated the following:

> The district court's grant of a preliminary injunction, although resting in part on the likelihood of success on the merits, did not adjudicate the merits of this controversy. *See Camenisch*, 451 U.S. at 394-96. Plaintiff has a continuing action for, *inter alia*, money damages and attorney's fees under 42 U.S.C. § 1983 for the same alleged constitutional violation that formed the basis of the preliminary injunction. This litigation, if pursued by the parties, will produce a final decision on the merits. These issues are very much live; the issue of preliminary relief, however, no longer would "make a difference to the legal interests of the parties."

*Bruder v. Smith*, 215 Fed. Appx. 412, 416-7 (6th Cir. 2007). Clearly, the Sixth Circuit, in its opinion, gave examples of what Bruder's continuing lawsuit might be and even states directly that "(t)hese issues are very much live. . . . " The issues, about which the Sixth Circuit made reference, are the "alleged constitutional [violations] that formed the basis of the preliminary injunction." *Id.* Clearly, neither mootness nor the "law of the case" doctrine prevents this case from proceeding to an evaluation of its merits.

The Defendants also claim that they are entitled to qualified immunity. However, Bruder correctly notes that if qualified immunity was applicable in this case, it would only apply to Smith. *See Behrens v. Pelletier*, 516 U.S. 299, 305 (1996) ("qualified-immunity defense 'shield[s] [government agents] from liability for civil damages insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known.'"). In order to determine if Smith is eligible for qualified immunity, the Court must undertake a two step analysis. First, it must inquire "whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and [second], whether that right was clearly established." *See v. Elyria*, 502 F.3d 484, 491 (6th Cir. 2007). In regard to Bruder's due process claim, the first part of this inquiry has been conceded to be true by the Defendants in their brief. Def.'s Br. at 11. Bruder's retaliation claim also satisfies the first prong of the inquiry, as "[i]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under 42 U.S.C. Section 1983 even if the act, when taken for a different reason, would have been proper." *Warmus v. Hank*, 1995 U.S. App. LEXIS 4208 (6th Cir. 1995).

In addressing the second part of the inquiry, the Court recognizes that "the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *See v. Elyria*, 502 F.3d 491. A *Loudermill* hearing, which requires an employer to provide the affected employee with notice of the pending charges against her, as well as an explanation of its evidence against her, is a clearly established constitutional right. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). Indeed, the Defendants' actions in initially labeling the October 5, 2005 hearing as a *"Loudermill "* hearing illustrates this conclusion. This point supports the survival of Bruder's retaliation claim over the invocation of the qualified immunity doctrine as well because an act of retaliation by an employer against an employee who exercised her constitutional right is a constitutional violation. *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310-11 (6th Cir. 2005). Inasmuch as *Loudermill* rights are also well known, this Court concludes

that a reasonable official should know that an act of retaliation against a subordinate for invoking her rights to a *Loudermill* hearing would be a constitutional violation.

The Defendants' arguments that Bruder's rights were not violated focus largely on the events that took place *after* she was terminated on October 27, 2005. These arguments are not relevant to this inquiry because Bruder is contending that the Defendants violated her due process rights *prior to* the date of her termination. In addition, this Court noted that it has previously concluded "that Bruder's fundamental civil rights were violated during the *Loudermill* hearing of October 5, 2005." *Bruder v. Smith*, 2005 U.S. Dist. LEXIS 38246 (E.D. Mich. 2005).

The Defendants also argue that Courie, Bruder's union steward, conducted an investigation which, in their opinion, satisfied their due process obligations. However, Bruder disagrees. An evaluation of these two divergent positions represents a dispute over a genuine issue of a material fact material fact inasmuch as the breadth and depth of Courie's investigation is not readily discernable from the record. In its December 22, 2005 order, the Court found that Bruder had not been "provided with *specific* charges regarding her termination" until she received her October 27, 2005 termination letter. Furthermore, Courie's investigation was not related to Bruder's other *Loudermill* right to be provided with the specific charges against her. Rather his investigation focused on Bruder's right to be able to respond to her employer's evidence. Thus, the Court believes, and does conclude, that there are indeed genuine issues of a material fact which surround the due process claim by Bruder in this case.

The Defendants also assert that there is no evidence to support Bruder's retaliation claim. The Court disagrees. As Bruder notes in her brief, Smith stated that he "could not integrate Ms. Bruder back into the department" because of her response to his settlement offer, which included

a request for her rights to have a *Loudermill* hearing. Pl.'s Ex. 8 at 13. The fact that there might be more than one interpretation of this dispute creates a genuine issue of a material fact as it applies to the Defendants' motivation for terminating Bruder.

However, in order to determine if there is a viable claim for retaliation, the Court must engage in a three part analysis. *Graham v. City of Mentor*, 118 Fed. Appx. 27, 29 (6th Cir. 2004). First, the Court must determine if Bruder was engaged in protected activity. Second, an adverse action or the deprivation of a benefit must be identified. Finally, it must be shown that Bruder was engaged in the protected activity when a substantial or motivating factor for the adverse action was undertaken.

The first prong of this test is satisfied because *Loudermill* rights are established due process rights and, as such, they are protected by the Fifth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983, and, of course, by *Cleveland Board of Education v. Loudermill*. 470 U.S. 532. Regarding the second prong of the test, there is no dispute that Bruder suffered an adverse action; namely, she was terminated from her position of employment as an assistant prosecuting attorney. However, the third prong's causation requirement is strongly disputed by the parties. Here, the Defendants assert that Bruder was fired for legitimate business reasons, including insubordination and lying. On the other hand, Bruder points to Smith's statements as proof that she was fired for requesting a *Loudermill* hearing. The Court believes that this is clearly a genuine issue of a material fact that when viewed in a light most favorable to the non-moving party (i.e., Bruder) could support the position that she lost her job for seeking to obtain a *Loudermill* hearing.[11]

---

[11]The Defendants claim that Bruder would have been terminated even if she had not requested a *Loudermill* hearing. The Court does not believe that the Defendants' argument on this point is credible as they had offered Bruder a disciplinary settlement that was less severe than

Finally, the Defendants argue that the Sixth Circuit only recognizes retaliation claims in First Amendment cases. This is an inaccurate representation of the law. While the case law in the Sixth Circuit regarding retaliation is primarily based on First Amendment issues, the Court is not aware of any precedent in this Circuit which holds that First Amendment cases are the exclusive domain of retaliation claims.[12]

## IV.

For the reasons stated above, the Defendants' motion for summary judgment on the due process issue is denied. Furthermore, because the Defendants are not eligible for qualified immunity and have not succeeded in demonstrating the absence of genuine issues of a material fact surrounding Bruder's claims of retaliation for asserting her right to a *Loudermill* hearing, the Court denies their motion for the entry of a summary judgment on this issue as well. Finally, the Court notes that Bruder agreed not to proceed with her liberty interest claim against the Defendants. Thus, the Defendants' motion for summary judgment as it relates to this issue is granted.

IT IS SO ORDERED.

---

termination.

[12] It should be noted that Judge Arthur Tarnow of the Eastern District of Michigan recently recited the elements of a retaliation claim without referring to the First Amendment. *Scott v. Burress*, 2008 U.S. Dist. LEXIS 15947 ( E.D. Mich. 2008).

Dated:  September 30, 2008                    s/ Julian Abele Cook, Jr.

        Detroit, Michigan                    JULIAN ABELE COOK, JR.

                                                United States District Court Judge


<u>Certificate of Service</u>


        I hereby certify that on September 30, 2008,  I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

                                                s/ Kay Alford

                                                Courtroom Deputy Clerk